[Civ. No. 9421. Fourth Dist., Div. Two. Jan. 27, 1970.]

FRITZ W. SCHULTZ et al., Plaintiffs and Respondents, v. GLENN J. MATHIAS et al., Defendants and Appellants.

## COUNSEL

Gerald O. Egan and Michael R. Quinn for Defendants and Appellants.

Abrams & Fox and Martin L. Abrams for Plaintiffs and Respondents.

## OPINION

**TAMURA, J.**—Plaintiffs' 21-year-old son was killed in a head-on automobile collision between a Porsche in which he was a passenger and a Chevrolet driven by defendant Glenn J. Mathias.[1] Plaintiffs brought the present action for the wrongful death of their son. Following a verdict and judgment for defendants, plaintiffs moved for a new trial on several grounds, including insufficiency of the evidence to support the verdict and newly discovered evidence. The motion was granted on both grounds. Defendants appeal from the order granting new trial.

The accident occurred near midnight on Highway 71, a two-lane highway running southerly from Pomona to Corona, at a point approximately ¼ miles south of its intersection with Merrill Avenue. The speed limit on Highway 71 where the accident occurred was 65 miles per hour; the highway was unlighted and the surrounding area was described as open country. Each lane of the highway was 12 feet wide with an 8-foot paved shoulder.

Defendant, accompanied by his fiancee, was southbound on Highway 71 at a speed of from 55 to 60 miles per hour. Highway 71 has a gentle curve to the east south of the Merrill Avenue intersection. Just before he reached the intersection, defendant lowered his headlights. He first observed headlights of the northbound Porsche when it was 600 to 800 feet away. When the cars were 350 to 400 feet apart, he saw that the Porsche was entirely in the southbound lane. Defendant veered to his left and applied his brakes. Just before the collision the Porsche veered to its right. Some three or four seconds elapsed between the time defendant first saw the Porsche in his lane and the impact. There were no other vehicles in the immediate vicinity.

The occupants of the Porsche died almost instantly. Defendant suffered a cut over his eye but was otherwise uninjured. His fiancee, who was asleep on the front seat just prior to the collision, was rendered unconscious by the impact. There were no eyewitnesses to the accident.

A highway patrol officer arrived on the scene at approximately 12:30. According to the officer: "Mr. Mathias stated that he was southbound on Highway 71 at approximately 60 miles per hour. He saw headlights coming at him, on his lane, and he applied the brakes and swerved to the center of the roadway to avoid colliding with the oncoming headlights." The officer fixed the point of impact to be three feet west of the center line. He

---

[1]Glenn J. Mathias was driving the Chevrolet with the permission of his father. Both were named as defendants in the action but in this opinion the designation "defendant" will be used to refer to Glenn J. Mathias, the driver.

testified that skidmarks left by both vehicles all appeared to be in the south-bound lane.

Plaintiffs' expert reconstructed the accident from the physical facts and made the following determinations: The Chevrolet left 14 feet of skidmarks commencing at a point when the vehicle's right front wheel would have been 3 feet west of the center line; the Porsche left 45 feet of skidmarks commencing at a point when the vehicle's right front wheel would have been 3 feet west of the center line. At the point of impact the right front wheel of the Chevrolet was 9 inches west of the center line and the right front wheel of the Porsche was 9 inches east of the center line. The expert testified that northbound there was a gentle curve in the highway to the right and that a northbound vehicle failing to negotiate the curve would have been where the Porsche commenced its skids. In his opinion the speed of the Porsche was at least 60 miles per hour. He found no mechanical defects in either vehicle.

Defendants contend that the order granting new trial should be reversed because (1) the showing made in support of the motion on the ground of newly discovered evidence was insufficient as a matter of law, and (2) the court abused its discretion in granting the motion for insufficiency of the evidence. We agree with those contentions.

## I

The ground of newly discovered evidence was based upon a declaration by plaintiffs' attorney reciting the following facts: On July 20, 1965, plaintiffs received a letter from a Mr. Andrus in which Andrus stated he and his wife arrived on the scene of the accident at 12:20; they did not witness the accident; the occupants of the Porsche died before the ambulance arrived; the driver of the Chevrolet stated, "[H]e didn't know what had happened but thought the other car swerved in front on him, although he couldn't say for sure." Plaintiffs' attorney ascertained that Andrus lived at an address in Pomona. On February 2, 1968, he attempted to have Andrus served with a subpoena for attendance in court on February 5; on February 5 he was informed that Andrus had moved and could not be located so he caused his investigator to attempt to locate Andrus; on February 7 at 3 p.m. the investigator reported that Andrus had been located in Los Angeles, but by that time the case had gone to the jury.

One of the statutory grounds for a new trial is: "Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence have discovered and produced at the trial." (Code Civ. Proc. § 657, subd. 4.) The essential elements which must be established are (1) that the evidence is newly discovered; (2) that reason-

able diligence has been exercised in its discovery and production; and (3) that the evidence is material to the movant's case. ■ While the granting of a new trial on the ground of newly discovered evidence is ordinarily a matter which is committed to the sound discretion of the trial court, where the evidence adduced in support of the motion is lacking in essential particulars, there is no basis for the exercise of discretion. (*Slemons* v. *Paterson,* 14 Cal.2d 612, 615-616 [96 P.2d 125]; *Bostard* v. *Bostard,* 258 Cal. App.2d 793, 799-800 [66 Cal.Rptr. 348]; *Lubeck* v. *Lopes,* 254 Cal.App. 2d 63, 67 [62 Cal.Rptr. 36]; *De Felice* v. *Tabor,* 149 Cal.App.2d 273, 275-276 [308 P.2d 377].)

■ In the present case the declaration was fatally deficient in material respects. (1) The evidence was not newly discovered; plaintiffs had the letter from Andrus more than two and a half years before trial. (2) There was no showing of due diligence in the production of the evidence. It does not appear when the attorney ascertained Andrus' address, whether he ever contacted Andrus, or whether he ever attempted to arrange for Andrus' presence in court other than by the attempted service of the subpoena. (3) The evidence was not shown to be material to the movants' case. ■ The newly discovered evidence must be material in the sense that it is likely to produce a different result. (*Waer* v. *Waer,* 189 Cal. 178, 180-181 [207 P. 891]; *Carpenter* v. *Kilgour,* 236 Cal.App.2d 651, 658 [46 Cal.Rptr. 115]); evidence which is merely cumulative or which simply tends to impeach or discredit a witness is insufficient. (*Waer* v. *Waer, supra,* p. 181; *Lubeck* v. *Lopes, supra,* p. 68.) ■ The statement defendant allegedly made to Andrus was substantially the same as the statement he made to the highway patrol officer and, hence, would have been cumulative. At most Andrus' testimony might have tended to impeach defendant's testimony.

■ Nor would the declaration have supported the order had the motion been made on the ground of "Accident or surprise, which ordinary prudence could not have guarded against." (Code Civ. Proc., 657, subd. 3.) Apart from the fact there was no showing that plaintiffs' counsel was justified in assuming that Andrus still resided in Pomona, the record discloses that after plaintiffs' counsel was apprised of the fact that Andrus had moved, he permitted the trial to proceed to conclusion without seeking a continuance or any other relief. On the showing made it would have been an abuse of discretion to have granted a new trial on the ground of accident or surprise. (*Kauffman* v. *De Mutiis,* 31 Cal.2d 429, 433-434 [189 P.2d 271].)

## II

The order granting new trial was also based on insufficiency of the evidence to justify the verdict. The order recited that ". . . it is the opinion of this court that defendant Glenn J. Mathias, who was operating the 1959

Chevrolet automobile . . . , was guilty of negligence in the operation of his vehicle, which negligence proximately contributed in causing the death of the deceased."[2]

■ In reviewing an order granting a motion for new trial on the ground of insufficiency of the evidence, the evidence must be viewed in the light most favorable to the moving party. (*McFarland* v. *Voorheis-Trindle Co.,* 52 Cal.2d 698, 707 [343 P.2d 923]; *Shoemaker* v. *State of California,* 202 Cal.App.2d 379, 381 [20 Cal.Rptr. 812].) All presumptions are in favor of the order and a reviewing court will not interfere unless a clear abuse of discretion is shown. (*Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 358 [170 P.2d 465].) ■ "It is only where it can be said as a matter of law that there is no substantial evidence to support a different judgment that an appellate court will reverse an order granting a new trial on insufficiency." (*Quintal* v. *Laurel Grove Hospital,* 62 Cal.2d 154, 168 [41 Cal.Rptr. 577, 397 P.2d 161]; *Yarrow* v. *State of California,* 53 Cal.2d 427, 434 [2 Cal. Rptr. 137, 348 P.2d 687]; *McFarland* v. *Voorheis-Trindle Co., supra,* 52 Cal.2d 698, 707; *Ballard* v. *Pacific Greyhound Lines, supra,* 28 Cal.2d 357, 359; *Brooks* v. *Metropolitan Life Ins. Co.,* 25 Cal.2d 305, 307 [163 P.2d 689]; *Martinez* v. *Harris,* 273 Cal.App.2d 385, 398 [78 Cal.Rptr. 325].)

Section 657 of the Code of Civil Procedure provides in relevant part: "A new trial shall not be granted upon the ground of insufficiency of the evidence . . . unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision."; it also provides that ". . . on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, . . . it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any such reasons." ■ The 1965 and 1967 amendments to section 657 were not intended to curb the traditional power of the trial court to grant a new trial. (*Russell* v. *Nelson,* 1 Cal.App.3d 919, 922 [82 Cal.Rptr. 221]; *Funderburk* v. *General Tel.Co., supra,* 262 Cal.App.2d 869, 877.)

In the instant case the question is whether there is any "substantial basis in the record" to support the trial court's opinion that defendant was negligent.[3]

---

[2]Similar specifications of reasons have been held to be sufficient compliance with the statutory requirement of section 657, Code of Civil Procedure. (*Hoover* v. *Emerald,* 265 Cal.App.2d 637, 641 [71 Cal.Rptr. 500]; *Funderburk* v. *General Tel. Co.,* 262 Cal.App.2d 869, 873-877 [69 Cal.Rtpr. 275].)

[3]Although the pretrial statements reserved the question whether plaintiffs' decedent

■ We find no evidence to indicate that defendant was negligent up to the moment he first saw the Porsche in the wrong lane. The evidence pertaining to defendant's speed, his attentiveness to the road ahead, the time when he first saw the headlights from the Porsche and when he first saw it in his lane were all without conflict. Plaintiffs contend that the fact that defendant lowered his headlights at the Merrill Avenue intersection and continued on low beam constituted negligence. The contention is frivolous; failure to lower the headlights would have constituted a violation of section 24409 of the Vehicle Code. Plaintiffs also assert that defendant was negligently inattentive, but there is no support in the record for the assertion. Plaintiffs' attempt, on cross-examination, to show that defendant might have been tired or sleepy was fruitless.

Thus the crux of the case is whether there is any substantial evidence that the evasive action taken by defendant upon being confronted with the oncoming vehicle in the wrong lane constituted negligence. Plaintiffs contend that defendant was negligent in attempting to avoid the collision by veering to his left instead of his right; that in so doing defendant crossed the center line in violation of section 21650 of the Vehicle Code and attempted to pass the Porsche on the wrong side in violation of section 21660 of the Vehicle Code.

There is no substantial evidence which would support a finding that the action taken by defendant constituted negligence. ■ "[A] person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments." (*Leo* v. *Dunham,* 41 Cal.2d 712, 714 [264 P.2d 1]; Prosser, Torts [3d ed.], 171-172; Harper & James, Torts, 938-939.) The basis of the rule is "that the actor is left no time for thought, or is reasonably so disturbed or excited, that he cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same conduct as one who has had full opportunity to reflect, even though it later appears that he made the wrong decision, which no reasonable man could possibly have made after due deliberation. . . ." (Prosser, *supra,* 171-172.) "The test is whether the actor took one of the courses of action which a standard man in that emergency might have taken, and such a course is not negligent even though it led to an injury which might have been prevented by adopting an alternative course of

was engaged in a joint venture with the driver of the Porsche, there was no evidence adduced at the trial that he was so engaged. The only issues that were submitted to the jury were negligence of the defendant, proximate cause and damages.

action." (Harper & James, *supra,* 938-939.) An emergency may excuse a violation of a statute for which a person may otherwise be liable (*Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581, 589 [177 P.2d 279]) provided he sustains the burden of showing he acted as a reasonable man under the circumstances. (*Alarid* v. *Vanier,* 50 Cal.2d 617, 624 [327 P.2d 897].)

 Ordinarily whether a person was unexpectedly confronted with an emergency and, whether being so confronted, his choice of alternatives to avoid disaster was one which a reasonable man might have taken under the circumstances are questions for the jury. (*Leo* v. *Dunham, supra,* 41 Cal.2d 712, 715; *Reynolds* v. *Filomeo,* 38 Cal.2d 5, 14-15 [236 P.2d 801].) In the case under review, however, the evidence establishes as a matter of law that defendant, through no fault of his own, was suddenly and unexpectedly confronted with an emergency and had no time for deliberate and considered choice of alternatives. According to plaintiffs' expert, the physical facts indicated that the Porsche swerved into the wrong lane because the driver was unable to negotiate the curve. At the moment defendant saw the Porsche in the wrong lane the vehicles were 350 to 400 feet apart, closing in on each other at a combined speed of at least 120 miles per hour or 180 feet per second. Manifestly defendant had no time for deliberate evasive action.

Plaintiffs suggest that defendant was negligent in failing to anticipate that the Porsche might attempt to get back into the correct lane. However, under the circumstances it would have been just as reasonable for defendant to have anticipated that the Porsche would continue in its course or even have veered further to its right. Defendant's conduct cannot be judged by hindsight. The fact that reflection after the fact may indicate that defendant's choice of alternatives was a mistake, if indeed it was, it being questionable whether the disaster could have been avoided by veering to the right, does not establish negligence. "[I]f the word 'substantial' means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case. . . ." (*Estate of Teed,* 112 Cal.App.2d 638, 645 [247 P.2d 54]; *People* v. *Bassett,* 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193, 443 P.2d 777]; *Lane & Pyron, Inc.* v. *Gibbs,* 266 Cal.App.2d 61, 68 [71 Cal.Rptr. 817]; *Newhart* v. *Pierce,* 254 Cal.App.2d 783, 790-791 [62 Cal. Rptr. 553].) Substantial evidence has also been defined as "evidence which a fair and reasonable mind would accept as adequate to support a conclusion." (*Chappell* v. *Palmer,* 236 Cal.App.2d 34, 36-37 [45 Cal.Rptr. 686]; *Gerhardt* v. *Fresno Medical Group,* 217 Cal.App.2d 353, 361 [31 Cal.Rptr.

633].) On the record in the instant case we conclude that the doctrine of imminent peril was applicable as a matter of law and that there was no substantial evidence that defendant's attempt to avoid the collision by veering to his left instead of his right constituted negligence.

Order granting new trial is reversed.

Kerrigan, Acting P.J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 25, 1970.